■ GRAYSTONE LIMITED PARTNERSHIP et al., Appellants, v CHURCH OIL COMPANY, INC., Respondent. [710 NYS2d 680] —Cardona, P. J. Appeal from an order of the Supreme Court (Dawson, J.), entered March 22, 1999 in Clinton County, which, *inter alia*, granted defendant's motion for summary judgment dismissing the complaint.

In January 1990, plaintiff Arthur S. Spiegel acquired certain real property, formerly used as an automobile service station, in the Town of Champlain, Clinton County, which he leased to defendant for a 10-year term commencing January 1, 1990. Under the terms of the lease, defendant was granted a right of first refusal to purchase the property. In addition, the lease provided that defendant could make leasehold improvements and that the landlord would proportionately reimburse it for the cost of such improvements in the event the property was sold to a third party during the term of the lease.

In February 1995, Siegel transferred the property to plaintiff Graystone Limited Partnership, an entity in which he had a partnership interest. In June 1998, Graystone received an offer from a third party to purchase the property. Graystone promptly notified defendant of the offer and inquired whether defendant intended to exercise its right of first refusal. Defendant did not respond to such inquiry, but advised Graystone that it intended to remain in possession of the premises until the expiration of the lease term, or any renewal thereof, notwithstanding the sale of the property to a third party.

In August 1998, plaintiffs commenced this declaratory judgment action seeking, *inter alia*, a ruling that defendant had no right to occupy the premises under the terms of the lease after the property was conveyed to a third party. Following joinder of issue, each side moved for summary judgment. Supreme

Court, *inter alia*, granted defendant's cross motion and dismissed the complaint, resulting in this appeal.

Resolution of the present matter turns upon the interpretation to be given certain provisions of the lease and whether defendant's leasehold interest terminated upon the conveyance of the property to a third party. In support of its claim that defendant's leasehold interest did terminate upon such event, plaintiffs rely upon the "Third" and "Fourth" paragraphs of the rider to the lease. The "Third" paragraph sets forth defendant's right of first refusal and states, in pertinent part, that: "Landlord hereby grants to tenant a right of first refusal to buy the leased premises at a price and upon terms equal to those contained in a bona fide offer to purchase made to the landlord during the term of this lease, provided lessee shall have fully performed said lease and made all payments required hereby to that time. * * * The obligations of lessee under this lease shall cease after the consummation of said sale" (emphasis supplied). The "Fourth" paragraph addresses leasehold improvements and provides, in relevant part, that:

"The tenant shall be allowed to make leasehold improvements necessary for the operation of the service station. These leasehold improvements shall become the property of the landlord upon the termination of the lease, subject to the following exceptions: * * *

"b. If the landlord sells the property and the tenant has not elected to exercise its option to purchase. * * *

"then, the landlord shall reimburse the tenant for the costs of these leasehold improvements, less ten (10%) percent of the cost thereof for each year of use during the original ten year term of the lease" (emphasis supplied).

Plaintiffs contend that the underscored language reveals that the sale of the property is a lease terminating event. Our reading of these provisions, however, does not support such an interpretation. The reference in the "Third" paragraph to the cessation of the tenant's obligation upon the sale of the property is, when read in the context of the entire paragraph, meant to refer to a sale to the tenant upon the exercise of the right of first refusal. The reference in the "Fourth" paragraph to the termination of the lease relates to the landlord's ownership of the tenant's improvements to the property when the lease ends. Its subsequent reference to the landlord's sale of the property when the tenant has not exercised its right of first refusal concerns the landlord's obligation to reimburse the tenant for the cost of such improvements. Giving the provisions of the lease their plain and ordinary meaning (*see, Wood v Maggie's*

*Tavern*, 257 AD2d 733, 734; *Morey v Security Mut. Ins. Co.*, 245 AD2d 852, 853), the language does not support a construction depriving defendant of its rights thereunder upon plaintiffs' sale of the property to a third party (*see, e.g., Eaton v Fisk*, 154 Misc 2d 266, *affd* 197 AD2d 862). We have considered plaintiffs' remaining contentions and find them to be without merit. Since this is an action for a declaratory judgment, however, dismissal of the complaint was improper and a declaration should be granted in favor of defendant (*see, Maurizzio v Lumbermens Mut. Cas. Co.*, 73 NY2d 951, 954).

Mercure and Graffeo, JJ., concur.

Rose, J. (concurring in part and dissenting in part). I respectfully dissent. Three considerations lead me to find that "reasonable minds could differ" as to whether the language of the "Fourth" paragraph of the rider to the lease supports a construction terminating the leasehold in the event of a sale (*see, Pikul v Clough, Harbour & Assocs.*, 190 AD2d 932, 933).

First, the "Fourth" paragraph unambiguously states that any improvements made by the tenant will become the property of the landlord "upon termination of the lease" except if the landlord either (a) defaults or (b) sells the property to someone other than the tenant. These two exceptions reasonably imply that either one is a terminating event upon which reimbursement is owed to the tenant. There would be no reason to include a sale as an "exception" to the general rule that improvements become the landlord's property upon termination unless the parties intended the sale to be such a terminating event.

Next, if one accepts the majority's interpretation, then, to be consistent, the first exception would also have to be read as not contemplating termination of the lease. Significantly, the lease makes no other provision for termination upon the landlord's default. As a result, the majority's interpretation would have the anomalous effect that the landlord's default would not terminate the lease. Moreover, given the general provision of the "Fourth" paragraph that improvements become the property of the landlord upon termination without reimbursement, our construction of either exception as requiring reimbursement to a tenant who continues to have full use of those improvements would also seem anomalous. Both exceptions make more sense viewed as terminating events which trigger reimbursement when the tenant's use of the improvements is cut short due to the actions of others.

Finally, under the majority's interpretation, it is highly unlikely that the circumstances necessary to invoke the terms

of the second exception would ever occur and, thus, the provision would be left without practical force and effect (*see, Loctite VSI v Chemfab N. Y.*, 268 AD2d 869, 871). If termination were not contemplated upon sale, then the second exception would require the landlord to reimburse the tenant for improvements only in the event that the landlord elected to terminate the agreement based on a default by the tenant,* and there was also a simultaneous, but unrelated, sale of the property to a third party. This combination of events is not likely to occur upon a sale, as the tenant would not voluntarily default if it wished to continue the lease and the landlord would not elect to terminate if it could thereby avoid reimbursement to the tenant. It is much more probable that the parties intended that a sale to someone other than the tenant would terminate the leasehold and result in reimbursement to the tenant.

Although the ambiguity of a term in a written contract does not necessarily preclude summary judgment (*see, Tracey Rd. Equip. v Village of Johnson City*, 174 AD2d 849, 851), where, as here, different meanings attributed to the term are reasonable and create a need to utilize extrinsic evidence, the issue is one of fact to be properly resolved by a jury (*see, Hartford Acc. & Indem. Co. v Wesolowski*, 33 NY2d 169; *Pikul v Clough, Harbour & Assocs.*, 190 AD2d 932, *supra*). Accordingly, I would reverse the grant of summary judgment to defendant and remit the matter to Supreme Court for trial.

Ordered that the order is modified, on the law, with costs to defendant, by reversing so much thereof as dismissed the complaint; it is declared that defendant's rights in the subject real property were not terminated by plaintiffs' sale of the property; and, as so modified, affirmed.

---

* The only express occasion for termination of the lease prior to expiration of its ten-year term is at the landlord's option upon an enumerated default by the tenant. Notably, the lease contains an incomplete description of such defaults in that there is an unexplained gap between the "Sixteenth" paragraph, which is crossed out, and a partial paragraph describing possible tenant defaults at the top of the next page immediately preceding the "Twenty-first" paragraph.